# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LEONARD W. LAPSLEY and BARBARA LAPSLEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 2:05-CV-174 JVB<br>) |
| XTEK, INC., | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Leonard Lapsley was an employee at the Indiana Steel Group plant in Burns Harbor. On May 19, 2004, he was greasing a spindle designed and manufactured by Defendant Xtek, Inc., when he was struck and injured by a stream of high pressure grease. A year later, Mr. Lapsley and his wife sued the Defendant for his injuries under a product liability theory. They believe that the spindle's faulty design caused the accident, and that he was not adequately warned about the looming danger. To back up their claims, the Plaintiffs have retained an expert witness. The Plaintiffs have also retained an expert witness to testify about Mr. Lapsley's inability to find employment as a result of the injuries.

On March 14, 2008, the Defendant moved for summary judgment. On that same day, the Defendant made a motion to exclude the Plaintiffs' expert witnesses' testimony and exhibits. On April 21, 2008, the Plaintiffs responded to the motion and, in turn, moved to strike portions of the Defendant's brief. The latter two motions are the subjects of this Opinion and Order: the Court denies the Plaintiffs' motion to strike and grants in part and denies in part the Defendant's

motion to exclude the Plaintiffs' expert witnesses.[1]

**A.      Background**

This case began in May 2005. On March 24, 2006, Magistrate Judge Rodovich set the expert disclosure deadline for July 31, 2006. Subsequently, without opposition from the Defendant, the Plaintiffs moved to extend the deadline four times: on August 11, September 29, November 16, and December 22, 2006. Judge Rodovich granted each of these requests, and ultimately extended the Plaintiffs' expert disclosure deadline to September 30, 2007.

On that day, the Plaintiffs gave the Defendant a five-page document, dated January 25, 2007, and entitled *Preliminary Report Lapsley v. Xtek by Gary M. Hutter, P.E., Ph.D., C.S.P.* The Plaintiffs also provided the Defendant with Hutter's curriculum vitae, but did not include any other documents or exhibits.

Almost five months later, on the eve of Hutter's deposition, the Plaintiffs' counsel emailed the Defendant's counsel a twenty-eight-second video-clip of the spindle. The Defendant's counsel did not see the email until 8:00 a.m. of February 15, 2008, the morning of Hutter's deposition. During the deposition, Hutter produced four additional documents:

- a forty-three page document regarding grease fittings from McMaster Carr;
- a twenty-two page document regarding grease fittings from GF&D Systems;
- twenty-two pages of calculations; and
- four pages of a material safety data sheet regarding Militec-1 grease.

Although the Defendant's attorneys did not have adequate time to review these

---

[1] At the parties' request, the Court stayed briefing on the motion for summary judgment until exclusion issues are decided.

documents, they proceeded with Hutter's deposition.

A month later, on March 14, the Defendant moved for summary judgment on the Plaintiffs' product liability claims. Along with the motion, it filed a request to strike all Hutter's materials submitted after the expert disclosure deadline and to exclude Hutter from testifying at trial, pursuant to Federal Rules of Civil Procedure 26(a) and 37 as well as Federal Rules of Evidence 702, 703, and 705. Also pursuant to Federal Rule of Evidence 702, the Defendant asks the Court to exclude from consideration the testimony of Edward Pagella, the Plaintiffs' occupational expert.

The Plaintiffs responded to the motion, submitting, among other things, a twelve-page affidavit from Hutter, where he explains the basis for his conclusions, together with forty-five pages of various diagrams and calculations done by Hutter. The Plaintiffs argue that Hutter's testimony is consistent with both the rules of evidence and the rules of civil procedure. They submit that exclusion of evidence pursuant to Rule 37 is unwarranted as the Defendant had always been aware of Hutter's conclusions and the materials he relied upon, thus suffering no harm by the delayed production of actual evidence. Moreover, the Plaintiffs argue that the Defendant did not follow Local Rule 37.1(b), which requires a party seeking discovery sanctions to certify that it has attempted in good faith to resolve the discovery dispute with its opponent.

The Defendant insists that Local Rule 37.1 does not apply in this situation and that Hutter's affidavit must be stricken along with other tardily filed evidence.

**B.     Discussion**

**(1)     *Local Rule 37.1***

In their Motion to Strike, the Plaintiffs are asking the Court to expunge the Defendant's briefs insofar as they seek to exclude Hutter's testimony from these proceedings. They argue that the Defendant may not ask that Hutter's testimony and materials be stricken because it has not complied with Local Rule 37.1(b) which requires that "[w]ith respect to every other motion concerning discovery, the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party in an effort to resolve the matter without court action."

In response, the Defendant maintains that the rule does not apply here because its motion does not concern discovery, which has ended months ago.

The Court agrees with the Defendant: its failure to confer with the Plaintiffs' counsel about the issues raised in the motion to exclude expert evidence does not prevent it from filing the motion. The purpose of Local Rule 37.1(b) is to prevent the parties from dragging the court into every discovery dispute while discovery is ongoing. Here, however, the discovery has concluded, and the substance of the Defendant's motion is not to get more discovery but to keep out what it believes to be inappropriately included evidence. Therefore, Local Rule 37.1(b) does not control, and the Court will deny the Plaintiffs' Motion to Strike.

**(2)** *Federal Rule of Civil Procedure 37*

Federal Rule of Civil Procedure 26(a)(2) requires that, at the time appointed by the Court, the parties must disclose expert witnesses and the witnesses' detailed written reports on the issues pertaining to their testimonies:

> (A) In General. . . . a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence

702, 703, or 705.

(B) Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness . . . . The report must contain:
    (I) a complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii) the data or other information considered by the witness in forming them;
    (iii) any exhibits that will be used to summarize or support them;
    (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
    (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
    (vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders.

Fed. R. Civ. P. 26(a)(2).

To give teeth to Rule 26(a), Rule 37(c)(1) prohibits the use of previously undisclosed expert witness's evidence, unless the failure to disclose was substantially justified or harmless; as an alternative to the exclusion, the rule allows the Court to order payment of reasonable expenses, including attorney's fees, caused by the delinquency:

If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure.

Fed. R. Civ. P. 37(c)(1).

There is no serious challenge to the fact that the Plaintiffs failed to comply with Rule 26(a)(2) as they did not give the Defendant Hutter's complete report, or the evidence upon which

5

he relied in drafting the report, by September 30, 2007, the deadline set by the magistrate judge. The *Preliminary Report* submitted on September 30 is just that: a preliminary report. It contains no discernable basis for Hutter's conclusions that the design or manufacture of the spindle were defective. (*See* Def.'s Ex. C, Hutter's Report, DE 42-4.) Nor was the report accompanied by any data or exhibits. In short, as presented, the report lacked substance necessary to make it usable in this case.

The Plaintiffs sought to correct this deficiency by giving the Defendant the supporting documents during Hutter's deposition, almost five months after the deadline, and only thirty days before the dispositive motions were due. In addition, with their Response to the Defendant's Motion to Exclude, the Plaintiffs submitted Hutter's affidavit that explains how he reached his conclusions and presents additional bases for his opinions.

In its Reply, the Defendant urges the Court to disregard these late submissions.

In exercising the discretion accorded by Rule 37, the Court will allow Hutter's affidavit and calculations, as well as all the materials he relied upon that have been disclosed up to this point; doing otherwise would punish the Plaintiffs too much. After all, although the Plaintiffs' lawyers have not substantially justified their lateness, the Defendant has not demonstrated such harm as would essentially require a directed verdict against the Plaintiffs, who stand no chance of proving their case without an expert witness. However, if the Defendant wishes, it may depose Hutter again; and it may petition this Court for reimbursement from the Plaintiffs' counsel for its attorney's fees arising from the actual time the attorney spent taking the deposition.

**(2)** *Federal Rules of Evidence 702, 703, and 705*

The Defendant's motion pursuant to Federal Rules of Evidence 702, 703, and 705 is largely based on the assumption that Hutter's affidavit and supporting materials are inadmissible evidence because they were not timely disclosed. However, insofar as the materials are admissible under Rule 37, they do survive the Defendant's *Daubert* challenge. Likewise, the Court will not exclude the Plaintiffs' other expert witness, Edward Pagella, whose testimony concerns Mr. Lapsley's ability to find work.

As a gatekeeper of experts' opinions, the Court must examine the expert's methodology and reasoning to make sure they are based on firm science. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989). The Court must consider two things: first, it must determine whether the expert is qualified and will testify to reliable scientific knowledge, *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995); second, it must determine whether the testimony is relevant, that is, whether it will assist the jury in understanding the evidence or deciding a fact at issue, *id*.

The latter step is self-explanatory: the suggested testimony "must 'fit' the issue to which the expert is testifying." *Porter v. Whitehall Labs., Inc.*, 9F.3d 607, 616 (7th Cir. 1993). As to the first step, the Court considers four factors:

(1) whether the theory or methodology can be or has been tested;

(2) whether the theory or methodology has been subjected to peer review and publication;

(3) whether there is a known or potential rate of error and whether there are standards controlling the operation of the methodology; and

(4) whether the theory and methodology are generally accepted in the relevant

community. *Deimer*, 58 F.3d at 344, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993). The Court must focus on principles and methodology, not on the conclusions that they generate. *Daubert*, 509 U.S. at 594–595.

(a)   *Expert Witness Hutter*

The Defendant does not challenge Hutter's qualifications. Rather, it insists that Hutter's opinions about the cause of Mr. Lapsley's injuries are without scientific basis. The Defendant especially attacks Hutter's conclusion that additional grooves in the spindle's thrust plate would have diminished the grease pressure so that it would not have sprayed out of the spindle. The Defendant submits that, although Hutter claims that he reached this conclusion after calculating physical forces involved in operating the spindle, he has not shown what specific calculations he made, whether they entail a margin of error, and whether such calculations have ever been subjected to peer review.

The Defendant also argues that Hutter's testimony is irrelevant, purportedly because it does not establish that an alternative design for the spindle could have existed or that the grease sprayed out of the spindle in the first place. The Defendant also insists that Hutter's methodology would not help the jury to understand the cause of Mr. Lapsley's injuries.

The Court is not persuaded: Hutter's conclusions are not so devoid of scientific principles that they must be automatically excluded from these proceedings. He testified that he used commonly known methodologies and physics calculations in arriving to his decisions. For example, he relied on Bernoulli's Equation when relating energies in fluids while in motion and applied widely accepted factors concerning the force necessary to penetrate human skin. Since

8

the principles upon which Hutter relied have long been established and accepted within the scientific and engineering community, both Hutter's methodology and his conclusions constitute admissible evidence.

The same goes for the relevancy of Hutter's evidence. Hutter has compared the design of the spindle that allegedly caused Mr. Lapsley's injury with the designs of other spindles manufactured by the Defendant. He claims that the physical qualities of the other spindles are such that they prevent grease pressure from building up. If that is true, which may be for the jury to decide, then Hutter's testimony is relevant in establishing that alternative designs existed and that the Defendant should have used them. Likewise, the fact that the Defendant disagrees with Hutter's ultimate conclusion that the grease escaped from the spindle rather than some other nearby appliance does not in itself disqualify Hutter as a witness. Consequently, the rules of evidence regarding expert witnesses do not mandate the exclusion of Hutter's testimony from this case.

(b)    *Expert Witness Pagella*

The Defendant insists that Edward Pagella's testimony that Mr. Lapsley's injuries prohibit him from obtaining any kind of work is "nothing more than broad assertions without any citation to standard principles relied in the area of expertise of vocational rehabilitation." (Def.'s Br. at 17, DE 42-1.) In particular, the Defendant objects to Pagella's failure to cite to the market analysis or any evidence of independent vocational testing performed on Mr. Lapsley. Furthermore, the Defendant suggests that Pagella is going beyond his expertise when he opines about the effects of Mr. Lapsley's medications on his ability to work.

The Plaintiffs counter that Pagella's conclusions are based on doctors' reports and his two-hour interview with Mr. Lapsley. The Plaintiffs note that it was unnecessary for Pagella to do any testing because Mr. Lapsley's limitations were obvious. Moreover, Pagella did review the Defendant's vocational rehabilitation expert's tests, albeit incomplete because they were stopped after Mr. Lapsley was unable to stay awake. The Plaintiffs argue that, having reviewed this information, Pagella could draw on his own experience as the vocational expert for the Social Security Administration Office of Hearings and Appeals to rightfully determine that Mr. Lapsley was unemployable. As such, claim the Plaintiffs, no demographic data is necessary to know that Mr. Lapsley is foreclosed from working again.

The Court agrees: Pagella's opinion—right or wrong—is based upon his extensive experience as a vocational specialist and information that is reliable enough to overcome the Defendant's *Daubert* challenge. Therefore, the Court will not disqualify Pagella from these proceedings.

**C.     Conclusion**

In summary, the Court rules as follows:

1.  The Plaintiffs' Motion to Strike (DE 50) is denied;
2.  The Defendant's Motion to Exclude Expert Testimony and Exhibits (DE 42) is granted in part and denied in part. The Defendant may depose Hutter again; and it may petition this Court for reimbursement from the Plaintiffs' counsel for its attorney's fees arising from the actual time the attorney spent taking the deposition. No other discovery will be permitted, and the Plaintiffs may not introduce any additional evidence regarding

Hutter's testimony.

3. Within ten days, the parties must submit a joint proposed schedule for the briefing on the Defendant's Motion for Summary Judgment.

SO ORDERED on October 23, 2008.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE