UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| LEONARD W. LAPSLEY and<br>BARBARA LAPSLEY, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 2:05-CV-174 JVB |
| XTEK, INC., | )<br>) | |
| Defendant. | )<br>) | |

**OPINION AND ORDER**

Plaintiff Leonard Lapsley was an employee at the Indiana Steel Group plant in Burns Harbor. On May 19, 2004, he was greasing a spindle designed and manufactured by Defendant Xtek, Inc., when he was struck and injured by a stream of high pressure grease. A year later, Mr. Lapsley and his wife sued Defendant for his injuries under the product liability theory. They believe that the spindle's faulty design or a manufacturing defect caused the accident and that he was not adequately warned about the looming danger. Defendant moved for summary judgment. For the reasons explained below, the Court grants in part and denies in part this motion.

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Facts**

Plaintiff Leonard Lapsley was employed as a lubrication millwright by International Steel

2

Group at the Burns Harbor plant. His job was to inject grease into a driveshaft, otherwise known as a "spindle," through a grease fitting on a roughing mill in the hot strip mill division. The drive shaft was manufactured and sold by Defendant Xtek, Inc.

The roughing mills are rolls through which steel strips are passed to reduce the strips' thickness. Power to the rolls is applied through upper and lower drive end pods which in turn drive the spindle. The spindle is equipped with "zerk" fittings. Zerk fittings are one-way valves through which grease is injected into the spindle. If the spindle is full or if the pressure builds up, grease should trickle out through a relief valve. In addition, the spindle is equipped with a glyd seal which relieves grease pressure once it reaches the level of 50 psi. When the spindle is off and the zerk fitting is removed, no grease pressure should be present in the spindle.

On May 19, 2004, Mr. Lapsley greased the spindle for the upper rolls and began greasing the spindle for the lower rolls. When Mr. Lapsley greased the upper spindle, he removed its zerk fitting so that he could grease the spindle faster. After greasing the upper spindle, Mr. Lapsley did not immediately replace the zerk fitting. Instead, he left the area for about seven minutes. When Mr. Lapsley returned to install the fitting and was about two feet away from the spindle, he heard a loud sound and everything went black: Mr. Lapsley was struck in the chest by a high-pressure stream of grease. The grease gun used by the Plaintiff remained in tact and did not blow up. As a result of the accident, Mr. Lapsley suffered serious injuries.

About a year before the accident, Mr. Lapsley's supervisor, Leonard Gapinski, found Defendant's instructions on how to lubricate its spindles. In the summer of 2003, Mr. Gapinski showed the instructions to Mr. Lapsley and said that they had to create their own safety and lockout procedures for greasing the spindles. Mr. Lapsley paged through the instructions for

about five minutes.

Also about a year before the accident, at the request of Mr. Gapinski, John Moloney, a mechanical maintenance technician, put Defendant's lubrication procedures for the roughing mills on the mill's website. The lubrication procedures appeared on the website in the same form as in the paper manual. The millwrights could access the procedures on the mill's intranet.

Among other things, the procedures regarding the greasing of the spindle instruct to not remove the zerk fittings, unless necessary:

> GENERAL GUIDELINES
> **If it is necessary to remove plugs or fittings from the spindle assembly for any reason they should be replaced.** This prevents the escape of the lubricant, and prevents water and other foreign elements from entering the gear cavity, which may lead to premature failure of the gear teeth.
> LUBRICATION PROCEDURES
> Gear Cavity. 1. Insert grease gun onto lubrication fitting located on the spindle shaft or on Casing O.D. Do not remove lubrication fittings.

(Df.'s Ex. V, Xtek Lubrication Guidelines and Procedures.)

On the day of the accident, Mr. Lapsley was not aware of any set procedure for lubricating the spindles in the roughing mills. According to him, the greasing method was left up to the millwright's discretion.

No one at the Burns Harbor plant nor at its sister mills was aware of other accidents similar to Mr. Lapsley's, where grease shot out of the spindle. Indeed, no one has heard of such accident happening anywhere and none of Defendant's employees are aware of such accidents.

There are no warning signs on the spindle, but according to Ronald Whipple, the Safety Manager for the Burns Harbor plant, a warning sign on the spindle would not be seen because grease covers everything.

After Mr. Lapsley's accident, the mill examined the spindle but did not find anything wrong. The spindle at issue was put in the roughing mill on the day of Mr. Lapsley's accident (May 19, 2004) and stayed in operation until February 2006, when its campaign was over and it was returned to Defendant for reconditioning.

Plaintiff's expert, Dr. Gary Hutter, opined during his deposition that the spindle's thrust plate did not have sufficient pathways (grease grooves) to permit the movement or release of internal lubricant. Earlier models had such pathways, which, according to Dr. Hutter, significantly reduce the maximum pressure of the lubricant. Therefore, according to Dr. Hutter, the lack of grease pathways made the spindle defective. While Dr. Hutter explained how the grease grooves dissipate the pressure, he did not propose the specific reason for why the grease pressure was high in the first place, inside a spindle that had been off for some time and whose zerk fitting had been removed.[1]

## C. Discussion

### (1) *Plaintiffs' Contentions*

Plaintiffs submit that Defendant introduced into the stream of commerce a spindle that had a defective design or a manufacturing defect, and which did not have an adequate warning about the risks associated with its use and maintenance. However, the Plaintiffs' briefs focus on the manufacturing defect and failure to warn claims only. They do not suggest that the spindle

---

[1] At the oral argument, the Plaintiff suggested that a certain spring inside the spindle expanded suddenly, causing the buildup of grease pressure. However, the Plaintiff did not identify any actual evidence to support this finding. At best, Plaintiff's expert implied in his affidavit that "under a variety of displacements for the spindle mechanism," grease pressure could build up to penetrate human skin. However, he did not identify the spring as the cause for the sudden increase in the grease pressure.

5

was properly designed yet defectively manufactured. Rather, they insist that the spindle's new design, which did not contain grease grooves in the thrust plate like the earlier models, is responsible for not allowing the grease pressure to dissipate during the spindle's malfunction. Accordingly, the Court considers the manufacturing defect claim abandoned.

As for the design defect claim, the Plaintiffs argue through their expert witness that, had the thrust plate had the additional grooves like the earlier models, no pressure sufficient to eject grease from the zerk fitting could have built up inside the spindle because the grease would have been able to freely move inside the machine.

Defendant attacks Plaintiffs' arguments by suggesting that their expert lacks proof for the cause of the accident and is merely speculating about the source of the ejecting grease or the cause of the ejection. In addition, Defendant contends that Mr. Lapsley substantially altered the spindle by removing the zerk fitting. Finally, Defendant maintains that it had no duty to warn Mr. Lapsley about the dangers it did not know and could not have known, and that, in any case, Mr. Lapsley was sufficiently warned not to remove the zerk fittings.

**(2)** *Manufacturing Defect*

Both parties agree that the Indiana law, and in particular the Indiana Product Liability Act, applies in this case. The Act subjects to liability the manufacturers who put into the stream of commerce products in defective and unreasonably dangerous conditions:

> [A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
> (2) the seller is engaged in the business of selling the product; and
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1.

This statute allows claims for design defect, manufacturing defect, and failure to warn about looming dangers. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (citing *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 281 (Ind. 1983) ("[T]he defect can be that the product was defectively designed, defectively manufactured, or that the manufacturer failed to supply adequate warnings or instructions as to the dangers associated with its use.")).

To establish a prima facie case of product liability under the defective design theory, a plaintiff must show that—

(1) the product was defective and unreasonably dangerous;

(2) the defect existed at the time the product left the defendant's control;

(3) the product was expected to and did reach the consumer without substantial change in its condition;

(4) the plaintiff's injuries were proximately caused by the defective product.

*Rogers v. Ford Motor Co.*, 952 F.Supp 606, 612 (N.D. Ind. 1997).

In light of these requirements, the Court finds that the Plaintiffs have created a genuine issue of fact regarding their manufacturing defect claim. Their expert witness testified—on the basis of his observations and calculations—that the grease would not have ejected out of the opening in the spindle had Defendant not changed its thrust plate design and kept grease

7

pathways in it. Likewise, Plaintiff's expert has shown that Defendant's warning not to remove the zerk fittings contemplates the prevention of foreign materials entering the spindle and avoidance of an accident when the spindle is on, not the violent escape of grease even when the machine is off. Since the Court does not evaluate the weight of the evidence, it will be up to the Jury to determine if the Plaintiffs design defect claim merits an award in their favor.

**(3)** *Failure to Warn*

As for the failure to warn,

"[a] product is defective if the seller fails to:

    (1) properly package or label the product to give reasonable warnings of danger about the product; or

    (2) give reasonably complete instructions on proper use of the product;

when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer."

Ind. Code § 34-20-4-2.

Indiana courts have interpreted this section to require the manufacturer of the product in question to give warning if (1) it knew or had reason to know that the product was likely to be dangerous when used in the manner employed by plaintiff; and (2) it had no reason to believe that plaintiff would realize that dangerous condition. *See Am. Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 187 (Ind. 1983) (citing Restatement, 2nd, Torts § 388)). "There is no duty to warn just because a product might conceivably cause injury." *Id*. (quoting 63 Am. Jur. 2d 53, *Products Liability* § 42). Also, "there is no duty to warn where there is only a remote possibility of danger

from the use of the product in question." *Id*.

Plaintiffs cannot prevail on their failure to warn claim because they have not introduced any evidence that Defendant knew or should have known that its spindle was likely to eject high pressure grease through the zerk opening even when powered off. Plaintiffs have provided no evidence of other similar incidents about which Defendant knew before Mr. Lapsley's accident. Nor have they provided any evidence of testing, studies, publications, or other industry reports that would make Defendant aware of the potential risk of harm resulting from an open zerk fitting. While Plaintiffs submit their expert's conclusion that the spindle was defective, they fail to submit any evidence that Defendant was aware of the defect and the danger that could result.

In fact, Defendant provided evidence to the contrary. Numerous persons both at the mill and those working for Defendant have testified that they were not aware of similar accidents either at Burns Harbor plant, a sister mill, or any other mill in the steel industry. Accordingly, the Plaintiffs' failure to warn claim fails as a matter of law.

**D. Conclusion**

The Court grants in part and denies in part Defendant's motion for summary judgment (DE 39): the Court dismisses the Plaintiffs' manufacturing defect and failure to warn claims, but allows the design defect claim to proceed to trial.

SO ORDERED on March 23, 2010.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE