UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LEONARD W. LAPSLEY and<br>BARBARA LAPSLEY,<br><br>  Plaintiffs,<br><br>  v.<br><br>XTEK, INC.,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 2:05-CV-174 JVB<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Plaintiff Leonard Lapsley was an employee at the Indiana Steel Group plant in Burns Harbor. He was greasing a spindle designed and manufactured by Defendant Xtek, Inc., when he was struck and injured by a stream of high pressure grease. Mr. Lapsley and his wife sued Defendant for his injuries under products liability theories: negligent design, negligent manufacturing, and failure to warn of danger. The Court granted summary judgment on the negligent manufacturing and failure to warn claims, but allowed the negligent design claim to be tried by a jury. At trial, Defendant claimed that a greasing wand Mr. Lapsley was using, not the spindle, was the cause of the accident. The jury found that Defendant failed to use reasonable care in designing the spindle and that the spindle was a responsible cause of physical harm to Mr. Lapsley. In its verdict, the jury allocated 65% of the fault to Defendant and 35% of the fault to non party International Steel Group. The jury then awarded $2,969,687 to Plaintiffs.

The Court entered a judgment on the jury's verdict and awarded Plaintiffs a prejudgment interest at the rate of .22%.

After the Court entered the judgment, Defendant filed two motions: a motion to alter or

amend judgment, pursuant to Rule 59; and a motion for judgment as a matter of law, pursuant to Rule 50(b). Plaintiffs responded only to the motion for judgment as a matter of law, thus conceding that the prejudgment interest was entered in error. The Court will amend its judgment accordingly. As to Defendant's second motion, it will be denied.

**B.      Standard under Rule 50**

A judgment as a matter of law is granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead it must ask whether any reasonable jury could have found for the Plaintiff. *Cf. Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 578–579 (7th Cir. 2003) (applying the standard in age discrimination lawsuit).

C.	Discussion

In its motion, Defendant presents three issues for consideration. First, Defendant rehashes the arguments of its unsuccessful *Daubert* motion to exclude the testimony of Dr. Hutter, Plaintiffs' expert witness, without whom Plaintiffs could not have prevailed on their product liability claim under Indiana law. Second, Defendant insists that the jury based Defendant's liability on the defective manufacturing claim—a claim ruled out at summary judgment—rather than the defective design claim. Finally, Defendant argues that, by allocating liability to non party International Steel Group, the jury reached an inconsistent verdict, warranting a new trial. Having reviewed the parties briefs and the record in the case, and having heard the parties' oral arguments, the Court finds no basis for reversing the jury's verdict.

**(1)** *Doctor Hutter's Testimony*

Defendant's contention that the Court should have excluded Dr. Hutter's testimony amounts to a motion to reconsider its unsuccessful *Daubert* motion. As with any motion to reconsider, Defendant had to show either that it became aware of new facts, not known at the time of the original motion, or that there has been a substantial change in law on the issue in question. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Defendant has not established either factor. Accordingly, the Court rests on its earlier decision regarding the admissibility of Dr. Hutter's testimony.

**(2)** *The Basis of Defendant's Liability*

Defendant argues that the jury's verdict is based on negligent manufacturing theory—a claim

3

ruled out on summary judgment—rather than a negligent design theory. The Court disagrees.

Plaintiffs' theory at trial was that a spring capable of generating a force of over 10,000 lbs. suddenly released after the installation of the spindle, causing the grease to spew out the zerk opening at great rate of speed and pressure. Plaintiffs' expert witness testified that, had the spindle been equipped with grease grooves as earlier designs have been, the pressure of the grease would have dissipated inside the spindle and it would not have injured Mr. Lapsley. While the loud boom gave reason for Plaintiffs to believe that the spring caused the pressure to spike, the essence of Plaintiffs' case was that, regardless of what caused the grease pressure to suddenly build up, the grooves would have prevented the ejection of the grease. That, in short, is a negligent design, not a negligent manufacturing, claim.

**(2)** *Jury's Allocation of Fault*

Finally, Defendant argues that the Jury reached an inconsistent verdict and requests a new trial. According to Defendant, Plaintiffs theory at trial was that the grease ejected out of the negligently designed spindle while its theory was that the grease ejected from Mr. Lapsley's grease gun. Defendant then concludes that, by allocating 35% of the fault to International Steel Group, Mr. Lapsley's employer, the Jury adopted "two different and mutually exclusive theories of causality." (Def.'s Br., DE 132 at 9.) Defendant contends that "the jury could assess liability against ISG [International Steel Group] only if it concluded that Lapsley was injured by his own grease gun or by the high pressure hose ISG supplied to that gun (the one without shutoff valves). No other evidence was adduced at trial that would have permitted the jury to find ISG liable." (*Id.*)

In response, Plaintiffs argue that Defendant waived any challenge on the basis of an

inconsistent verdict because it did not object to the jury instructions or the verdict forms at the time they were provided to the Jury. Plaintiffs point out that, in fact, Defendant requested that the Court include in the jury instructions a comparative fault instruction. Finally, Plaintiffs submits that, at the conclusion of evidence, Defendant objected to Plaintiffs' attempt to remove all instructions concerning nonparty liability and to remove International Steel Group from the verdict form.

The Jury's allocation of partial fault to International Steel Group does not render its verdict inconsistent. Without objection from either party, the Court instructed the Jury of Plaintiffs' and Defendant's theories of their case:

> Plaintiffs Leonard Lapsley and Barbara Lapsley sued Defendant Xtek, Inc. Plaintiffs claim the Defendant failed to use reasonable care in designing the spindle used in the roughing mill where Mr. Lapsley worked, resulting in injuries to Mr. Lapsley. Plaintiffs also claim that as a consequence of Mr. Lapsley's injuries, Mrs. Lapsley has suffered a loss of consortium. Plaintiffs must prove their claims by the preponderance of the evidence.
>
> Defendant denies that it was negligent in designing the spindle in question and denies that the spindle was the cause of Mr. Lapsley's accident. Defendant is not required to disprove Plaintiffs' claims.
>
> Defendant contends that Mr. Lapsley failed to use reasonable care and that this failure was a responsible cause of his injuries. *Defendant further contends that non-party International Steel Group, Mr. Lapsley's employer, failed to use reasonable care and that this failure is also a responsible cause of his injuries.* The Defendant must prove these two contentions by a preponderance of the evidence.

(Court's Jury Instr. 21, DE 116 at 22 (emphasis added).)

The Court also defined reasonable care:

> A person may fail to use reasonable care by acting or by failing to act. A person may fail to use reasonable care if he or she does something a reasonably careful person would not do in the same situation, or fails to do something a reasonably careful person would do in the same situation.

(Court's Jury Instr. 31, DE 116 at 32.)

Finally, the Court directed the Jury—again without objection from Defendant—to determine if International Steel Group had any fault in Mr. Lapsley's injuries:

> If you find that Plaintiffs proved by the preponderance of the evidence that Defendant failed to use reasonable care in designing the spindle that Mr. Lapsley was greasing on the day of his injuries and that the spindle was a responsible cause of physical harm to Mr. Lapsley, *you must determine Mr. Lapsley's, the Defendant's, and International Steel Group's (who is a nonparty) percentage of fault, if any, in the incident which caused his injuries*. You must state on the verdict form the percentage of fault, if any, attributable to Mr. Lapsley, the Defendant, and International Steel Group.

(Court's Jury Instr. 38, DE 116 at 39 (emphasis added).)

In light of these instructions, which were either introduced at the request of Defendant or without objection from Defendant, the Jury could have reasonably concluded that International Steel Group shared a degree of fault for Plaintiffs' injuries. During trial, evidence was introduced that International Steel Group was focused more on the production of steel than on the safety of its employees. There was also evidence that the zerk fitting was removed to expedite the greasing process and the impression was left that such removal could have contributed to Leonard's eventual injuries because the zerk opening created a path for the grease to eject out of the spindle. From these facts, the jury could have reasonably concluded that International Steel Group should have supervised and trained its employees better to avert the accident. Thus, consistent with the jury instructions, the Jury could have found contributory negligence on the part of International Steel Group. Accordingly, the Court will not disturb the jury's verdict.

### D. Conclusion

The Court grants Defendant's unopposed motion to vacate the award of pre-judgment

6

interest (DE 131), and vacates the award of pre-judgment interest.

The Court denies Defendant's motion to alter or amend judgment, pursuant to Rule 59 (DE 132).

SO ORDERED on September 30, 2011.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE